### J. B. ELLISON & SONS v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. January 17, 1906.)

#### No. 16.

1. CUSTOMS DUTIES—MERCHANDISE ENTERED FOR IMMEDIATE TRANSPORTATION—
   CHANGE OF TARIFF ACTS—CONDITION PRECEDENT.

   A few hours before the tariff act of July 24, 1897, went into effect, certain merchandise was imported at the port of New York and entered for immediate transportation to the port of Philadelphia, but did not reach the latter port until after the act became operative. *Held*, that the importation came within section 33 of said Act, c. 11, 30 Stat. 213 [U. S. Comp. St. 1901, p. 1701], providing that the duties prescribed by the act should be imposed on "all goods * * * previously entered without payment of duty, and under bond for * * * transportation, * * * for which no permit of delivery * * * has been issued."

2. SAME—CONFUSION OF GOODS SUBJECT TO DIFFERENT RATES.

   *Held* that, though part of an importation might be subject to a lower rate of duty than the remainder, such differentiation is precluded, where the identity of such part is not proved, and the importation must be treated as a whole.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For decision below, see 136 Fed. 969, affirming a decision of the Board of United States General Appraisers, G. A. 5,482, T. D. 24,796, which had affirmed the assessment of duty by the collector of customs at the port of Philadelphia.

Edward S. Hatch (J. Stuart Tompkins, of counsel), for the importers.

J. Whitaker Thompson, U. S. Atty., and William B. Stewart, Jr., Asst. U. S. Atty.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This case involves the question whether the imported merchandise was dutiable under the tariff act of August 28, 1894, or the act of July 24, 1897. The Board of United States General Appraisers found the following to be facts:

"The goods consist of woolen and worsted cloths, and were imported from England by the steamer 'Paris,' which arrived at New York on July 24, 1897, on which day a representative of the importer entered them at the New York custom house for immediate transportation to Philadelphia; the entry reciting that they were intended to be transported by the Pennsylvania Railroad Company under their bond dated February 12, 1893, and also that they were consigned to the collector of customs at Philadelphia. The precise hour of the day on which this immediate transportation entry was made is not shown, but is stated to have been early in the day. On the same day, Saturday, July 24, 1897, the importers sent a clerk to the custom house at Philadelphia who appeared before the special deputy collector there, presented a duly certified consular invoice, tendered the duties in cash, and asked permission to make consumption entry of the merchandise. The testimony shows that this was at some time before 12 o'clock noon. The deputy collector refused the entry, on the ground that the goods had not reached Philadelphia. Subsequently on July 28th the goods were formally entered and were assessed for duty under paragraph 366 of the tariff act of July 24, 1897. The importers paid the duties under protest, claiming that the articles were properly dutiable under the tariff act of August 28, 1894."

It has been held that the tariff act of 1897 took effect at the moment of its approval by the President, which was at 6 minutes past 4 o'clock on the afternoon of July 24, 1897, and that goods entered for consumption on that day prior to such approval were dutiable under the act of 1894. United States v. Iselin (C. C.) 87 Fed. 194, affirmed 95 Fed. 1007, 36 C. C. A. 681; United States v. Stoddard (C. C.) 89 Fed. 699, affirmed 91 Fed. 1000, 34 C. C. A. 175; Nunn v. William Gerst Brewing Co., 99 Fed. 939, 40 C. C. A. 190.

Section 33 of the act of July 24, 1897, c. 11, 30 Stat. 213 [U. S. Comp. St. 1901, p. 1701], provides as follows:

"Sec. 33. That on and after the date when this act shall go into effect, all goods, wares and merchandise previously imported for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation or other purposes, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act, and to no other duty upon the entry or withdrawal thereof; provided that when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its entry."

The record in this case contains a report by the collector of customs at New York (which the Board of General Appraisers found to be true) that the Pennsylvania Railroad Company receipted for 6 of the 40 cases containing the goods in question, on July 24, 1897, and for the other 34 cases on July 26th. There is, however, nothing in the record to show which of the cases were received by the railroad company on July 24th, and the board found that it was "impossible to tell which of the whole importation these six cases were." Moreover, there is no evidence to show the time of day at which the six cases were received by the railroad company. None of the goods were entered at Philadelphia until July 28th. The Board of General Appraisers overruled the protest of the importers and affirmed the

decision of the collector, who had held that the entire importation was dutiable under the tariff act of 1897. Thereupon the importers applied to the Circuit Court for a review of the decision of the Board of General Appraisers. The court upon hearing, and after argument, affirmed the decision of the board and entered a decree accordingly. From that decree the importers appealed to this court.

The pertinent facts of this case are as hereinbefore stated. Now, if it were admissible to treat the delivery of the six cases to the railroad company as a constructive delivery of them at Philadelphia, still the lack of evidence as to the identity of these cases and as to the precise time on July 24th of their delivery precludes their differentiation from the mass of the importation. The importation, therefore, must be treated as a whole. United States v. Ranlett et al., 172 U. S. 133, 19 Sup. Ct. 114, 43 L. Ed. 393. The agent of the importer at New York might have entered these goods at the New York custom house for consumption, and had such entry been made prior to the approval by the President of the act of 1897, they would then indeed have been dutiable under the act of 1894. This, however, was not done. The entry made was for immediate transportation to Philadelphia. This, as the Board of General Appraisers and the Circuit Court held, brought the goods directly within the terms of section 33 of the act of 1897, subjecting to the duties of that act goods previously entered without payment of duty and under bond for transportation for which no permit of delivery to the importer or his agent had been issued.

In view of the uncontroverted facts, we concur in the conclusion of the Board of General Appraisers and the Circuit Court that the collector at Philadelphia could not lawfully have accepted the tender of duty there made to him or have permitted a consumption entry. The importation was then under the control of the collector at New York and did not come within the authority of the collector at Philadelphia until a date subsequent to the 24th of July.

The judgment of the Circuit Court is affirmed.